And we'll move on to the next case that's scheduled for oral argument this morning. Visavakumar Thamotar v. U.S. Attorney General. Visavanathan Redrekumaran is here for the petitioner, and Gregory Michael Kelch is here for the respondent. And Mr. Redrekumaran, you may begin with your argument. May it please the court, this is Visavanathan Redrekumaran representing Visavakumar Thamotar. With respect to the jurisdictional question, with respect to the issue whether there is a live controversy under Article 3, we both the government and the petitioner are on the same page, therefore I move to the merits to the case your honor. The elephant in the room is whether the agency considers the denial of asylum under HCFR 208.16e. 208.16e clearly states, among others, the factors to be considered will include the reason for the denial. Yes, they consider the reason for the denial. It also states any reasonable alternatives available to applicants, such as reunification with a spouse or minor children in a third country. With respect to the idea, I did not even bother to consider under 208.16e, but since the BIA can address the issue, the BIA mentioned this regulation. They simply mentioned that there is no discussion whatsoever whether there is any alternative place where he can be reunited with his family. They consider these factors as just another factor to be taken into consideration, but that's not the case. This is an important factor. This is a unique factor. This mandates the BIA agency to reconsider. Because of this uniqueness of this factor, your honor, even the current administration, they filed, they proposed to eliminate Section 208.e. They published a notice in the Federal Register on December 19, 2019. They want to eliminate this whole section. The reason the present administration wants to eliminate this section because of its uniqueness. Here, neither the BIA nor the IA did not even bother to address whether there is any place where he can be reunited. An unpublished opinion by the Fourth Circuit in a case called Shantu v. Lynch, 654 FF 608. The Fourth Circuit, in that case, the petitioner had a visa in Norway. So the Fourth Circuit considered whether he can be reunited with his family in contrary to law and also abuse of discretion. Then I move to the other factors taken by the agency about the credibility issue. Our position is that the credibility can be taken into account. We are not disputing that. But the credibility finding that was cited by the BIA was not decided by the IJ himself. The petitioner has not cited any fact found in BIA's decision that was not found by the IJ. The father's affidavit, that was the main thing during the remand proceedings. The petitioner submitted the father's affidavit and the petitioner asked the judge to revisit the issue, the credibility issue. And what the court said, the IJ's response, the court will only address respondents' claim that he will face future persecution and torture on account of his family ethnicity alone or in conjunction with his status as a failed asylum seeker. This is Judge Wilson. You have a pretty tough standard of review to overcome. What is your best argument for how the decision by the agency is manifestly contrary to law and abuse of discretion? That's a pretty heavy standard of review for you to overcome, especially given the fact that the agency in this case took into consideration some inconsistencies in the petitioner's testimony. For example, there was an inconsistency with regard to how he entered the United States, his manner of entry into the United States, and various other inconsistencies. And the agency took those factors into consideration. How can we say that based on those factors taken into consideration by the agency that their decision was manifestly contrary to law and an abuse of discretion? Okay. Yes, Your Honor. With respect to my initial argument that the agency does not address or apply HCFR 208.16e, that is contrary to law, that is manifestly contrary to law, and also an abuse of discretion. That is plain and simple. They did not consider that regulation. So that is one form of that argument that the agency's decision should be vacated. The second part of my argument, Your Honor, I'm not going to the merits of the credibility argument before this court. Our position is a legal position, whether the BIA erroneously, illegally engaged in fact-finding pertains to credibility. That is a legal issue. That is our position. Since they engage in fact-finding, that is contrary to law. That is manifestly contrary to law. I'm not going to argue that substantial evidence supports the credibility or not. No, I'm not arguing that. I'm arguing because the BIA itself says, the IJ himself says, the primary reason is because of the contradiction between the father's affidavit and the wife's affidavit. And when we submitted the father's affidavit, the IJ did not do anything at all. But the BIA analyzed. The BIA picked holes on father's affidavit. But our position, whether right or wrong, that's a different matter. But the BIA should not have remanded to the IJ to engage in fact-finding. So that is contrary to law. So that's our second pronged argument. Our third pronged argument, they talk about the fact that he came through third countries, he should have applied asylum in those countries. But our position is that Congress has preempted this factor. After a matter of pull-up, the Congress enacted a statute called Save Third Countries. So that Congress has preempted that area. Once Congress has preempted that area, the agency cannot throw back those factors and deny asylum. Because as the Second Circuit said in Huang's case, Your Honor, that if the agency can do that, they can frustrate the policy and the preference of Congress. So here, I'm not arguing on that. This is by Congress. The agency cannot sneak these factors through a backdoor and deny asylum on a discretion. It means that the discretionary aspect swallows the statutory aspect of the promulgated by Congress. Again, our argument, Your Honor, that is contrary to law. And the fourth argument, the agency did not engage in the balancing of factors. I'm not arguing whether the balancing of which weight should be given for that factor versus this factor. I'm not arguing that. Our argument, the agency did not engage in balancing the factors. The only factor they took into consideration, well, he's been given withholding here, so that is fine. But in a matter of pull-up, the BIA identified several factors, the country conditions. Those factors were not considered by the BIA or the IG. So that is also contrary to law. It is true that it's a high standard. But as the Fourth Circuit said, in Dancombe versus Consolas, although the standard of review is differential, it does not offer a blank check to the IG, Your Honor. Thank you, Your Honor. If there are any questions, I'll come back. Otherwise, I'll come back during my rebuttal time, Your Honor. Thank you, Counsel. I see you've reserved some time for rebuttal, and we'll hear from Mr. Kelch on behalf of the government. Good morning. May I please the Court? My name is Greg Kelch. I'm here representing the United States Attorney General. Mr. Thamitar was granted withholding of removal and no longer faces harm in Sri Lanka. This case concerns whether he should be granted the additional benefits of With the Court's permission, I would begin by at least a brief discussion of the jurisdictional question in case the Court has questions, and then move on to the discretionary denial of asylum. With regard to the Court's jurisdiction, every circuit court that has looked at this has agreed that an order granting withholding of removal is a final order of removal for jurisdictional purposes, and there's no dispute between the parties. And indeed, the term order of removal is defined under the immigration statute to include an order finding the alien to be removable. And in this case, the petitioner was charged with removability for seeking entry without a proper entry document. He conceded removability, and the immigration judge found him to be removable. So that alone makes this an order of removal. And then, of course, petitioner was also ordered to be removed from the country. So therefore, this is an order of removal. It's a final order because the BIA has dismissed his appeal. And we also agree with the petitioner that there is a live case in controversy because there are substantial benefits to asylee status. As I said, it provides a path to citizenship. He would be eligible for LPR status after a year, and then after five years of lawful permanent residence status, he would be eligible for citizenship. And so at this point, I will pause in case the court has questions, and then I will move on to the discretionary denial of asylum. With regard to the denial of asylum, I just want to begin by noting that this case is unique for a couple of reasons. First of all, it's unique because Mr. Famitar was granted withholding removal on a completely different basis than his original asylum claim. The immigration judge found that even though the original asylum claim lacked merit, because of his status as a failed asylum seeker, that alone makes him eligible for protection of removal. He was granted withholding of removal on that basis. So that's unique. Additionally, the case is unique because unlike probably every other asylum case that you've heard, here we are not looking at the petitioner's eligibility for asylum. We agree that he is eligible. We are looking at whether he merits asylum in the exercise of discretion. And asylum is a discretionary benefit, even for those who are eligible. And the burden of proof for demonstrating that they merit asylum in the exercise of discretion rests with the applicant. The court's review, as Judge Wilson noted, is very limited. The discretionary denial of asylum shall be conclusive unless it is manifestly contrary to law and an abuse of discretion. And the government respectfully asserts that the denial of asylum here was not manifestly contrary to law and abuse of discretion. One important factor that the BIA considered was the petitioner's lack of candor in his dealing with immigration authorities. In particular, Mr. Samatar was inconsistent about whether the police beat him when they went to his home. Mr. Samatar appeared at a credible fear interview for an asylum officer about a week after he entered the United States. And at the conclusion of the interview, the asylum officer asked him if there was anything else he wanted to state about his claim. Mr. Samatar volunteered that there was. And he said that three days after he was released from jail, the army came to his home and beat him and also beat his wife and son. In immigration court, however, he changed his testimony and said that he had left Sri Lanka and he had called home sometime in October 2015 to speak to his wife. And she had said that the police came to the house looking for him and beat her. So in one version of the story, he is present when the police arrive at the home and that he is also beaten. And in another version of the story, he is calling home and it is his wife who's beaten, not him. And he was specifically asked about this. Mr. Kelce, this is Jill Pryor. Let's suppose we agree with you that the IJ made a proper credibility determination. Doesn't the agency still have to weigh that against the other factors that your opponent mentioned? And also tell me how it did that. Yes, Your Honor, they did look at the, they did balance this against other factors. Another factor that the agency looked at was his circumvention of orderly refugee procedures. There is a document in the record, it's found on page 742, filed notification to exit the migration station. When Mr. Samatar was passing through Mexico on his way to the United States, it appears that the government of Mexico has given him the opportunity to stay in Mexico as a permanent resident for humanitarian reasons. And that is also a factor. And I do want to point out, this is not the firm resettlement bar. The firm resettlement bar goes to the petitioner's eligibility for asylum. Had Mr. Samatar been firmly resettled in Mexico, he would not be eligible for asylum at all. We recognize that he is eligible. However, the fact that he has been offered permanent residence in another country for humanitarian reasons is a valid factor for the BIA to consider when deciding whether he should be granted asylum in the exercise of discretion. Let me just ask you a clarifying question about that. Did the agency consider his method of offering him the opportunity to stay? In other words, is there an argument that he didn't present himself properly in the U.S.? No, Your Honor. My understanding of the fact is that he did present himself at a port of entry, seeking asylum. So that wasn't the issue. There is a concern that he passed through, I think we counted about 10 different countries on his way to the United States, and did not seek refugee protections in any of those countries. But I think for purposes here this morning, I want to emphasize, I think our strongest point is that he actually was offered permanent residence in Mexico for humanitarian reasons. And then that brings us to the next factor, which is his contact in the United States. Because, Your Honor, sometimes an individual who is fleeing a country of persecution, they may choose to come to the United States rather than a different country, because they have family members here or a support group here. And the BIA recognizes that. But in this case, he really doesn't have significant contacts with the United States. The cousin or the uncle who helped him flee Sri Lanka, that person lives in Canada. And Mr. Samatar says he has a cousin in the United States, but he doesn't appear to really have any contact with that individual. So there's no significant ties to the United States. In immigration court, Mr. Samatar simply stated that he came here because he thought this was the best country. And so that brings us to the issue of family unification. That is an important factor. However, the BIA has considered that. They said in their decision, while unification of family is also an appropriate consideration, they felt that that factor did not overcome the negative factors in the case. And they cited the regulation. I understand Mr. Samatar's argument that it's only one sentence. But as this court has heard so many times, the BIA is not required to write an end to the Jesus on every contention. They have recognized the issue. They've shown that they've thought about it and considered it. They specifically cited the regulation to which Mr. Samatar refers. And they have simply made determination that that factor alone did not merit him asylum. How do you respond to Mr. Samatar's argument that the BIA engaged in improper fact finding? He seems to be making that argument with regard to the credibility finding and family reunification. So I'll discuss family reunification first. As the BIA noted, there is no dispute in the record that he does have a wife and three children in Sri Lanka. So that's not a finding of fact. As far as whether he could reunify with them in a third country, it appears that the BIA has agreed with Mr. Samatar that he won't be able to reunify with them in a third country. Had they thought that he could have, they would have said so in their decision and said that this is a mitigating factor. What they've said here is that reunification is an important consideration. They've considered it, but it did not overcome the other factors. So we would assert that that means that they have properly considered it. With regard to the adverse credibility determination, I want to make two points. First of all, the immigration judge made very clear that he was concerned about this inconsistency regarding when the police went to Mr. Samatar's home. So that clearly is part of the immigration judge's adverse credibility determination. The BIA cited other inconsistencies in Mr. Samatar's testimony, but as we stated in our brief, all of those were identified by the facts. And we provided the page numbers and the records where those are. So it's not fact-finding for the BIA to note them also. And even still, even when this court reviews an adverse credibility determination, it reviews it on the record as a whole. I mean, it isn't inappropriate for the BIA to note that in addition to the major inconsistency in his story about whether the police have beaten him, he was also inconsistent about these other aspects of his story as well. And then that would bring me to the final factor, which is whether he faces harm in Sri Lanka. Now, as I said at the beginning, this case is very unique because he has been granted withholding of removal. So therefore, on a separate basis. So he doesn't actually face any return to Sri Lanka. So Mr. Samatar has cited country conditions evidence about the difficulties that ethnic Tamils face in Sri Lanka, but that really doesn't apply here because Mr. Samatar will not be removed to Sri Lanka. He has been granted withholding of removal from that country. And so in all, the government's position is that the BIA has properly balanced the factors in this case. This is Judge Wilson. I'm a little confused now. The attorney general has exercised its discretion to deny Mr. Samatar asylum. There's an order of removal and we have jurisdiction to review the order of the final order of removal, but there's been a withholding of removal. So what does that all mean for Mr. Samatar? Does that mean he will not be deported? Your Honor, I do understand the court's question as I recognize how confusing this can be. This is the technically correct way for the immigration judge to express himself. He issued an order of removal to Sri Lanka because that's the country that's designated by the government. And then he granted the application for withholding of removal. And under the immigration statute, there is an order of preference of where DHS will attempt to place him. That can include any country that will take him. And I will say to the court that anecdotally, it's a practical matter. It is very difficult for the government to place individuals in a third country, but we do reserve the right to do so. I understand. Okay. What about the point that the Fourth Circuit made in the Zuh case or Zuh, if I'm pronouncing it correctly, that if the government's position on that were accepted, then the asylum seekers who met the higher standard of proof of persecution that is required for withholding of removal would be the very ones who received less protection when they were denied asylum on that because he is granted withholding of removal on a different basis from his asylum application. He is granted with, I mean, he is eligible simply for having filed the application. This is Judge Lagoa. Hasn't he been granted withholding of removal because he's a failed asylum applicant? Yes, Your Honor, he has. And because if he's a failed applicant under the testimony or the evidence taken based on his ethnicity, if he's returned to Sri Lanka as a failed asylum applicant, he would be subjected to serious persecution. That is the finding of the immigration judge. Yes, Your Honor. But because he's a failed asylum seeker, not because of any other reason. Correct, Your Honor. Because of his status as a failed asylum seeker, the agency also has... So, Your Honor, my time has expired. Can I continue? You may. Yes. Sorry, Your Honor. Yes, the agency has some skepticism as of whether his original asylum claim has merit. However, whether he actually was targeted for persecution because authorities believe he belongs to the LTTE. However, the agency does accept that he faces persecution as a failed asylum seeker. If there are no further questions, I thank the court for its time. Thank you, Mr. Kelch. Mr. Rudrakumaran, you have reserved some time for rebuttal. Yes, Your Honor. Thank you, Judge. Firstly, with respect to the standard of review, Your Honor, as I said at the beginning, the Fourth Circuit has repeatedly said in Zhu and Duncombe that although the standard of review is differential, it does not offer IJ a blank check. The Second Circuit also noted in Huang v. INS that the courts have established extensive limitations on the IJ's exercise of discretion in the context of asylum law. And then the government talks about a lot, Your Honor. But interestingly, neither the IJ nor the BIA said a single word, single line that he has status in Mexico. In fact, the Mexico document says that he is a stateless person. So because of that, I don't think that neither the IJ nor the agency did not give any credence or anything that he was offered a permanent residence status in Mexico. This is a U.S. attorney's argument. That cannot be a basis to sustain the agency's finding. So the BIA simply stated, did not exhaust an orderly procedure, but did not identify which procedures. Then I go to the main thing, Your Honor. There are two main things. One is 208.16E. The government argues, they mention the regulation. They don't have to exist of their thinking. But at least they should have given some kind of indication that they consider, they analyze some kind of an indication. There's not a single word about the third country. Not a single word, Your Honor. So they did not consider at all. So that's manifest contrary to law. And regarding the fact, the immigration judge's fact finding, the IJ specifically said that his main concern about the discrepancy between the epidemic and the father's epidemic. But he did not analyze anything at all. Only the BIA analyzed. And also in that case, in the remand proceedings, the petitioner challenged the credibility of note and said that he wants to subpoena the asylum officer. Well, what the judge's position was, well, it is beyond the remand. He's not going to call you. So the IJ legally errors in not calling the asylum officer. So therefore, our position on the BIA engaged in illegal fact finding on the credibility issue. And seeking asylum in a third country is a hot issue now. In fact, this Monday, the Ninth Circuit issued a decision on the transit ban because the present administration made that as the litmus test, that if you come to a third country, if you don't apply for asylum, then your claim is not merit. So Ninth Circuit said, you know, I just did two, three lines in the case East Bay Sanctuary versus Bard. The decision came on this Monday. In some of the agency's conclusion that aliens failure to apply for asylum in Guatemala, Mexico justify an assumption that the alien does not have a valid asylum claim. And the categorical adverse credibility finding ignores the long line of cases holding that aliens are not required to apply for asylum in countries they pass through on their way to the United States. So there's a long line of case, but they can take us as perfect. Since the position since Congress has enacted firm resettlement and also the safe country Congress, the agency cannot take it. And also with respect to Mexico, the government has expired. Thank you. Okay. All right. Okay. That's fine. Yeah. Thanks. Thank you, counsel. We'll take the matter under advisement. And that completes our docket for this morning. And the court will be in recess until nine o'clock tomorrow morning. Thank you.